UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES )<br>)<br>v. )<br>)<br>CESAR MERCEDES ) | Cr. No. 04-10319-WGY |

### CESAR MERCEDES' SENTENCING MEMORANDUM

Now comes the defendant, Cesar Mercedes, and submits this sentencing memorandum to aid the Court in its sentencing decision.  A thorough Presentence Report (hereinafter the "Report") has been prepared and submitted to the parties and the Court, setting forth an accurate account of Mr. Mercedes' offense and his personal background and history.   The parties submitted objections to the initial Report, and upon information and belief, the sole remaining guideline issue is the prosecution's objection the Report's conclusion that Mr. Mercedes is entitled to a minor role adjustment. This memorandum will focus on those factors the Court should consider in fashioning a reasonable sentence, to wit, the guideline score as currently calculated, Mr. Mercedes' substantial cooperation, and Mr. Mercedes' personal characteristics and other factors set forth in 18 U.S.C. 3553.

Mr. Mercedes plead guilty to Counts One and Two of the Indictment charging him with conspiracy to import heroin and illegal importation of heroin.  He made known to the prosecution from the time of his arrest his willingness to admit his wrongdoing and

to assist law enforcement with their investigation and prosecution of the case. In fact, Mr. Mercedes confessed to swallowing drugs when questioned by CPB personnel upon his arrival at Logan Airport.

Mr. Mercedes immediate confession, his decision to admit his illegal conduct, and his willingness to provide substantial assistance say more about who he is than does the crimes to which he plead guilty. As documented in the Presentence Report, and as the Court heard from the defendant himself during his testimony at the trial of Mr. Hernandez, Mr. Mercedes had absolutely no experience, prior participation or knowledge of the narcotics trade prior to being approached by his co-defendant Francisco Navarro, and succumbing to the temptation he was offered.

At the time he was approached, Mr. Mercedes was employed at the Cangrejos Yacht Club in Puerto Rico where he worked as a handyman, providing maintenance and carpentry services. He had worked at the yacht club for half dozen years, and had worked as a carpenter and laborer since he left school after the 9th grade to help provide for his family. He had never been charged or arrested for any criminal conduct whatsoever. He lived with his mother, his brother, his girlfriend Nilda Campos, and his 6 year old son, Yediel, all in his mother's house. At the age of 32, he dreamed of being able to move to his own apartment where he could raise his son with Ms. Campos. He learned of a government sponsored low-income housing program, and he successfully applied for an apartment, needing $1600.00 to cover closing costs. With insufficient savings, nowhere to borrow the money, and a deadline to come up with money, he was a ripe candidate for Mr. Navarro's enticement, and he made the tragic decision he did.

Mr. Mercedes testified at the trial of Noel Hernandez, testimony that was consistent with what he had told prosecutors and law enforcement investigators from the time of his arrest. He testified as to how he was approached by Francisco Nevarro, a casual friend, who, aware of Mr. Mercedes financial needs, recruited him as a courier. He testified that reservations were made and paid for by Mr. Navarro or others unknown to him, that he flew to the Dominican Republic with Mr. Navarro and met by an acquaintance of Navarro's. He testified that he was taught how to swallow the pellets of heroin, that he believed them to contain cocaine, and that he was brought to the airport, again provided with airline tickets, and was to be met by persons unknown once he arrived at Logan International Airport.

Mr. Mercedes uncontradicted trial testimony and the version of the offense submitted to the Probation Officer by the prosecution clearly supports the Probation Department's conclusion that Mr. Mercedes' limited role as a courier, his lack of control over the type of drug to be transported, or the price to be paid for the drugs, (in short, his complete lack of decision making authority or participation in any level of planning), warrants a two-level role adjustment. His actions demonstrate <u>both</u> less culpability than the average defendant involved in a like offense, <u>and</u> less culpability than the other participants in the present case. The two-level role adjustment is fully supported and warranted by the facts of this case.

The Report sets forth Mr. Mercedes guideline range of 30 to 37 months. Upon information and belief, and pursuant to the plea agreement, the prosecution will move for a downward departure from the guideline range to reflect Mr. Mercedes substantial assistance and cooperation. The prosecution will also detail for the Court the full nature

and extent of Mr. Mercedes cooperation. The Court had the benefit of observing Mr. Mercedes testimony, and hence witnessed his substantial assistance first hand.

With a heretofore nonexistent criminal record, his long history of gainful employment, his demonstrated commitment to his familial responsibilities, there is nothing in Mr. Mercedes background which supports an inference that he will ever reoffend, or that the public needs to be protected from him. Mr. Mercedes has been incarcerated at the Plymouth County Correction Facility since his arrest in July of 2004, some 14 months ago. He has had no visitors, and has not seen his son, as his family resides in Puerto Rico. Upon completion of the sentence this Court imposes, Mr. Mercedes, a legal permanent resident who came to the United States as child with his family, will be deported to the Dominican Republic, one of the poorest nations in the Western Hemisphere. He will leave behind his young son, his mother and his brother, his partner Ms. Campos, and will be barred from ever reentering the United States. And so while the crime he committed is a serious one, Mr. Mercedes involvement and the repercussions it will have for him and his family is nothing less than devastating; his permanent exile from the United States and his family will constitute a lifetime of punishment. So desperate was Mr. Mercedes to improve his circumstances by creating a home for himself and his son, he risked his life and their future, and he lost the latter.

Taking all the foregoing factors into consideration, Mr. Mercedes prays the Court sentence him to 18 months incarceration, no fine, as he is unable to pay one, a term of

supervised release of 3 years, and a mandatory special assessment of $200.00.

        Respectfully Submitted,

        By his attorney

        __/s/ Michael C. Andrews__

        Michael C. Andrews
        21 Custom House Street
        Boston, Massachusetts 02110
        (617) 951-0072
        BBO# 546470